**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>FINGER LAKES DEBT PARTNERS, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 17-20000-rdd |

**NOTICE OF MOTION FOR ORDER CONFIRMING CHAPTER 11
PLAN PROPOSED BY LYRICAL OPPORTUNITY PARTNERS, L.P. WITHOUT
<u>NEED FOR FURTHER DISCLOSURE OR SOLICITATION</u>**

PLEASE TAKE NOTICE that a hearing on the attached motion will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, on **July 7, 2017 at 10:00 a.m.**

PLEASE TAKE FURTHER NOTICE that any objection to the motion must be filed with the Court and served on movant's undersigned counsel by **June 30, 2017 at 4:00 p.m.,** with a courtesy copy delivered to chambers at the time of service.

Dated: June 2, 2017
       New York, New York

STORCH AMINI PC

/s/ Avery Samet
Avery Samet
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100

*Attorneys for Creditor Lyrical Opportunity Partners, L.P.*

Avery Samet
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100

*Attorneys for Creditor Lyrical Opportunity
Partners, L.P.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>FINGER LAKES DEBT PARTNERS, LLC,<br><br>                               Debtor. | Chapter 11<br><br>Case No. 17-20000-rdd |

**MOTION FOR ORDER CONFIRMING CHAPTER 11 PLAN
PROPOSED BY LYRICAL OPPORTUNITY PARTNERS, L.P. WITHOUT
NEED FOR FURTHER DISCLOSURE OR SOLICITATION**

Creditor Lyrical Opportunity Partners, L.P. ("Lyrical"), hereby moves for an order confirming its proposed Chapter 11 Plan of Reorganization (the "Plan") for the above-named Debtor ("Debt Partners") without the need for further disclosure or solicitation of votes to accept or reject the Plan, and respectfully states:

**PRELIMINARY STATEMENT**

1.      This chapter 11 case is related to another chapter 11 case pending before this Court, that of Finger Lakes Capital Partners LLC ("Capital Partners") (Case No. 16-22112-rdd). Debt Partners, the Debtor herein, was formed to provide financing to portfolio companies Capital Partners managed and in which Lyrical was the primary investor. Capital Partners is Debt Partners' managing partner. But for a single $100 tax claim asserted by the IRS, Lyrical is Debt Partners' sole creditor, with a $5 million final judgment against it (the "Judgment"), a copy of which is attached as Exhibit B to Lyrical's proof of claim.

2.     By this motion, Lyrical seeks to confirm the Plan, which would swap its claim for Debt Partners' sole asset, a loan to one of the portfolio companies, Tiber Industries, Inc. ("Tiber"), in the amount of $3 million (the "Tiber Note").

**BACKGROUND**

I.     **PROCEDURAL HISTORY OF THIS CASE**

3.     Capital Partners is Debt Partners' managing member. Capital Partner's members are Gregory Shalov and Zubin Mehta. Debt Partners commenced this case on January 11, 2017. Debt Partners filed a Statement of Financial Affairs [ECF No. 1] listing Lyrical as its sole creditor and the Tiber Note as its sole asset.

4.     Debt Partners' first day declaration, sworn to January 12, 2017 by Gregory Shalov, as managing member of Capital Partners [ECF No. 4] (the "Shalov Decl."), proffered two reasons for seeking bankruptcy protection: (1) the belief that there is significant value in Tiber and Debt Partners is attempting to monetize its investment in Tiber and (2) the belief that were Lyrical to enforce its Judgment, Lyrical would wrongfully recover ahead of other creditors and equity interest holders because of a purported subordination agreement contained in Lyrical's promissory note. (*Id.* ¶¶3-11.)

5.     By order, entered February 24, 2017, this Court set April 6, 2017 as the deadline for filing prepetition claims [ECF No. 13]. The only claims filed by the bar date were Lyrical's and a proof of claim filed by the IRS in the amount of $100.

6.     Debt Partners' exclusivity period expired on May 11, 2017. Other than a motion for an order setting a bar date and authorizing the employment of counsel under Bankruptcy Code section 327(a) (the same counsel which represents Capital Partners in its chapter 11 case), the docket is devoid of activity. No monthly operating reports have been filed since the petition date.

2

## II. BACKGROUND CONCERNING DISPUTE BETWEEN THE PARTIES; VALUE OF TIBER NOTE

7. Unless otherwise noted, all facts in this section come from the Memorandum Opinion entered by the Delaware Chancery Court in *Finger Lakes Capital Partners, LLC v. Honeoye Lake Acquis., LLC and Lyrical Opp. Partners, L.P.*, C.A. No. 9742-vcl, 2015 WL 6455367 (Del. Ch. Oct. 26, 2015), *aff'd in relevant part*, 151 A.3d 450 (Del. 2016), a copy of which is attached as Exhibit 1 (the "Chancery Dec.").

8. Lyrical served as Capital Partners' seed investor and contributed the vast majority of capital for Capital Partners' investments in five portfolio companies. (Chancery Dec. at 1.) Capital Partners formed a different Delaware LLC as a special purpose vehicle to own each portfolio company. (*Id*.)

9. "Three of the portfolio companies performed terribly. As losses mounted, tensions grew between [Capital Partners] and Lyrical. After the relationship soured completely, Lyrical exercised its right to take control of the special purpose vehicles." (*Id*.) In 2014, after one portfolio company (Revolabs) achieved a successful liquidity event, Capital Partners filed suit against Lyrical in Delaware Chancery Court seeking to compel a distribution of the sale proceeds. Lyrical filed counterclaims. The action was tried in June 2015 and the Delaware Chancery Court issued the above-referenced Memorandum Opinion. On November 14, 2016, the Delaware Supreme Court affirmed the decision, in all relevant parts.

10. Capital Partners formed Debt Partners in early 2006 for the purpose of providing funding to three "struggling" portfolio companies, including Tiber. (*Id.* at 16). "Lyrical provided [Debt Partners] with $250,000 in equity capital and $3.4 million in debt financing. Shalov and Mehta raised $575,000 in additional equity capital from other investors." (*Id*.)

3

11. "Tiber fared poorly during the financial crisis of 2008 and required a loan from [Debt Partners]. Tiber defaulted on its loan, and its business never recovered. The evidence at trial established that Tiber is unlikely ever to repay the loan." (*Id*. at 24.) "After Lyrical took control of Tiber Holdings, Lyrical determined that there was no remaining value to Tiber's equity. Shalov and Mehta, however, control [Debt Partners]. As of trial, they had not foreclosed on [Debt Partners'] loan, nor had they agreed to any other resolution. <u>Although Tiber has not officially been accounted for as a total loss, that is what it is</u>." (*Id*., emphasis added.)

### III.   LYRICAL'S JUDGMENT

12. As discussed above, Lyrical made a $250,000 equity investment into Debt Partners and also loaned Debt Partners $3.4 million pursuant to a Promissory Note dated March 10, 2006, a copy of which is attached as Exhibit A to Lyrical's proof of claim (the "<u>Note</u>"). The loan carried interest at the rate of 17% per annum, with a default rate of 24% per annum. In or about July 2011, Debt Partners made partial principal repayment, reducing the principal balance to $2,225,000.

13. The Note includes a subordination clause (the "<u>Subordination Clause</u>") which provides:

> Holder agrees that for purposes of collecting any and all amounts due hereunder upon the occurrence and during the continuance of an Event of Default (provided that the Holder shall be permitted, at such time, to enforce its rights hereunder and retain payments received hereunder) Holder shall be deemed an equity holder of Borrower and, accordingly, Holder's claims for any and all amounts due hereunder shall be junior to other creditors of the Borrower and shall be on a pro-rata basis with the equity holders of Borrower.

(Note §7(b)).

14. In June 2015, Lyrical declared a default under the Note. On July 17, 2015, Lyrical commenced an action to enforce the Note against Debt Partners by filing a motion for summary judgment in lieu of complaint in New York Supreme Court, New York County. Among other

4

things, Debt Partners opposed the motion because the Subordination Clause purportedly limited Lyrical's rights to receiving an equity distribution from Debt Partners and prevented Lyrical from obtaining a judgment on the Note.

15.     By order, entered March 4, 2016, a copy of which is attached as <u>Exhibit 2</u>, the Supreme Court (Ramos, J.) rejected Debt Partners' argument and granted Lyrical's motion for summary judgment. Justice Ramos ruled Lyrical was entitled to judgment in the full amount sought, but that the issue of the impact of the Subordination Clause on Lyrical's ability to collect would be left for another day. (Hr'g Tr. 5:21-7:7, a copy of which is attached as <u>Exhibit 3</u>.)

16.     The Supreme Court entered Judgment in favor of Lyrical and against Debt Partners in the amount of $4,740,461.64 on June 30, 2016, and Lyrical timely filed its proof of claim in the amount of $4,968,393.43, which reflects the accrual of $227,931.79 in post-judgment interest until the petition date.

## IV.    DEBT PARTNERS' SOLE ASSET AND CAPITAL STRUCTURE

17.     Debt Partners has just one meaningful asset: a $3 million loan to Tiber.[1] Tiber has not made any payment on debts owing to Debt Partners since September 2009. As noted above, the Delaware Chancery Court found after trial that Tiber is unlikely to ever repay Debt Partners on the loan and Tiber is a "total loss."

18.     As discussed above, in addition to the Note, Lyrical contributed $250,000 as an equity investment in Debt Partners and Shalov and Mehta obtained $575,000 in equity capital from other parties. Therefore, Lyrical owns 30.3% of the membership interests in Debt Partners. Debt Partners claims that Lyrical owns 84.38% of the membership interests in Debt Partners if one were to convert the Judgment to "equity" pursuant to the Subordination Clause. (Shalov Decl. ¶6.)

---

[1] Debt Partners also scheduled a bank account with a balance of $395 as of the petition date.

5

**V.      THE PLAN**

19.     Lyrical's proposed Plan is simple and is just two pages long.  It proposes to pay the IRS in full, and transfer the Tiber Note to Lyrical in full and final satisfaction of Lyrical's claim on account of the Judgment.  The Tiber Note is likely worthless, because as the Delaware Chancery Court held, Tiber is hopelessly insolvent and has been so for a decade.  Even so, the Judgment exceeds the Tiber Note by almost $3 million.

20.     Debt Partners has been defunct for years, as its sole asset is non-performing and it faces substantial liabilities to Lyrical, but the Plan allows for Debt Partners to wind up its affairs and for Lyrical to close out its otherwise lost investment in Tiber.  The Plan is a cramdown plan to the extent that it seeks to cram down Class 2 (Equity Interests) pursuant to Bankruptcy Code section 1129(b).

21.     Confirmation of the Plan will provide for a speedy resolution of this case, which was only filed to forestall Lyrical from collecting on its Judgment and which has not proceeded since the petition date.

**ARGUMENT**

**I.      THE PLAN SHOULD BE CONFIRMED**

   **A.      The Plan Complies with Applicable Provisions of Section 1129(a)**

22.     The Plan should be confirmed because it complies with all requirements of section 1129(a), except subsection (8), as set forth below:

§ 1129(a)(1).  The Plan complies with all applicable provisions of the Bankruptcy Code, including the requirements of section 1122-23.

§ 1129(a)(2)-(3).  Lyrical proposed the Plan in good faith, in accordance with all applicable provisions of the Bankruptcy Code, and not by any means forbidden by law.

6

§ 1129(a)(4). The Plan does not provide for the payment of any person's professional fees, except Debt Partners' counsel, subject to Court approval following its filing a final fee application.

§ 1129(a)(5). The Plan does not change Debt Partners' management structure or compensation.

§ 1129(a)(6). This subsection is inapplicable, as there is no applicable governmental, rate-setting authority.

§ 1129(a)(7), (10). The sole impaired class entitled to vote (Class 1, Unsecured Claims) is comprised of Lyrical's claim, and Lyrical accepts the Plan.

§ 1129(a)(9). The Plan provides for the IRS to be paid in full, and for professionals to be paid from moneys already received (or from proceeds of the Tiber loan, if necessary).

§ 1129(a)(11). On confirmation and the transfer of the Tiber Note pursuant to the Plan, Lyrical's claim will be satisfied and hence Debt Partners' reason for filing this case will no longer exist.

§ 1129(a)(12). The Plan provides for the payment of all U.S. Trustee fees through entry of a final decree, conversion, or dismissal.

§ 1129(a)(13)-(15). These subsections are inapplicable.

**B.    The Plan Complies with Section 1129(b)**

23.    The Shalov Declaration contends the Note underlying Lyrical's Judgment—but not the Judgement itself—is subject to a subordination agreement whereby Lyrical agreed to subordinate its claim to other creditors and be treated pro-rata as equity. Debt Partners claims that Lyrical owns 84.39% of the Debtor. (Shalov Decl. ¶6.)

24.    While subordination rights are enforceable in bankruptcy pursuant to Bankruptcy Code section 510(a), they do not apply for the purpose of determining confirmability of a cramdown plan. 11 U.S.C. § 1129(b) ("Notwithstanding section 510(a) of this title…"). *See In re*

*Tribune Co.*, 472 B.R. 223, 241 (Bankr. D. Del. 2012) ("[T]he meaning of 'notwithstanding section 510(a) of this title' means that Section 1129(b)) is applied without prevention or obstruction of any applicable subordination agreements"); *In re TCI 2 Holdings LLC*, 428 B.R. 117, 141 (Bankr. D.N.J. 2010) (same).

25.     The Plan herein complies with section 1129(b)(2)(B) because (1) the IRS will paid an amount equal to the value of its claim and (b) no holder of any claim or interest that is junior to Lyrical will receive any property under the Plan.  According to Debt Partners' Schedules of Assets and Liabilities, the company has no other assets, but the Plan provides for holders of membership interests in Debt Partners to retain their admittedly valueless interests pursuant to the Plan.  Holders of membership interests are therefore deemed to reject the Plan under section 1126(g) of the Bankruptcy Code.

## II.     THERE IS NO NEED FOR FURTHER DISCLOSURE OR SOLICITATION

26.     Lyrical submits that under these circumstances no disclosure statement is required under Bankruptcy Code section 1125 and no need exists to solicit votes to accept or reject the Plan. There exist only two creditors in this case.  One supports confirmation (Lyrical), while the other will be paid in full and is therefore deemed to have accepted the Plan under section 1126(f) (IRS). Holders of equity interest will retain their valueless interests under the Plan, and are therefore deemed to reject under section 1126(g).  Neither the IRS nor holders of equity interests need be given a disclosure statement or solicited.  *See*, *e.g.*, *In re Stanley Hotel, Inc.*, 13 B.R. 926, 929 (Bankr. D. Colo. 1981) ("Clearly, if acceptances need not be solicited, a disclosure statement is not required").

## **NOTICE**

27.     Lyrical will serve a copy of the Plan and this motion by first class mail on the last-known address for each holder of an equity interest listed in Debt Partners' Schedules of Assets and Liabilities and the IRS at the address listed in its proof of claim.

WHEREFORE, Lyrical requests that this Court enter an order finding that the Plan satisfies the requirements of section 1129, confirming the Plan, and granting such other and further relief as is just and proper.

Dated:  June 2, 2017
       New York, New York

STORCH AMINI PC

/s/ Avery Samet
Avery Samet
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100

*Attorneys for Creditor Lyrical Opportunity Partners, L.P.*