| | |
|---|---|
| DELBELLO DONNELLAN WEINGARTEN<br>WISE & WIEDERKEHR, LLP<br>*Attorneys for the Debtor*<br>One North Lexington Avenue<br>White Plains, New York 10601<br>(914) 681-0200<br>Jonathan S. Pasternak, Esq.<br>Dawn Kirby, Esq. | *Hearing Date: July 7, 2017*<br>*Hearing Time: 10:00 a.m.* |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

FINGER LAKES DEBT PARTNERS, LLC,

                                                   Debtor.

Chapter 11
Case No. 17-20000 (RDD)

----------------------------------------------------------------X

## OBJECTION TO MOTION FOR ORDER CONFIRMING CHAPTER 11 PROPOSED PLAN BY LYRICAL OPPORTUNITY PARTNERS, L.P. WITHOUT NEED FOR FURTHER DISCLOSURE OR SOLICITATION

TO:    HONORABLE ROBERT D. DRAIN,
          UNITED STATES BANKRUPTCY JUDGE:

       Finger Lakes Debt Partners, LLC, the above captioned debtor and debtor-in-possession ("Debtor"), by its attorneys DelBello Donnellan Weingarten Wise & Wiederkehr, LLP, files this objection (the "Objection") to the motion ("Motion") filed by Lyrical Opportunity Partners, L.P. ("Lyrical") for an order confirming Lyrical's self-styled "Plan" (the "Plan") without the need for further disclosure or solicitation.

       In summary, the Plan cannot be confirmed for a variety of legal and factual reasons, including but not limited to: (a) the Plan was not proposed in good faith; (b) the Plan does not comply with all applicable requirements of Sections 1122, 1123, 1125 and 1129 of the Bankruptcy Code; (c) assuming the Court were to permit disposal of a requirement for disclosure

as required under Section 1125, the Plan does not even meet the most minimal of disclosure requirements and is missing material substantive provisions of the kind necessary to confirm the Plan under Section 1129 of the Bankruptcy Code.

At a minimum, the Court should, if not outright deny the Motion in its entirety, adjourn consideration of the Motion until after the Debtor's claim objection is heard on August 24th, in that if the Debtor is successful on its claim objection, the Plan is fatally flawed and cannot be confirmed even if the other deficiencies and flaws are addressed and rectified in a modified plan.

### Jurisdiction and Venue

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This proceeding has been initiated pursuant to Bankruptcy Code §§502, 503 and 507 and Bankruptcy Rules 3007(a) and (d).

### Background

4. On January 11, 2017, (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). Thereafter the Debtor's proceeding was referred to this Court for administration under the Bankruptcy Code.

5. The Debtor has continued as a Debtor-in-Possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

6. No trustee, examiner or statutory committee has been appointed.

7. The Debtor is an asset management firm that was formed in 2003.

8. The sole asset currently under management of the Debtor is a $3 million debt investment in a start-up entity known as Tiber Industries, Inc. ("Tiber")

9. The Debtor believes there is significant value in its investment in Tiber.

10. As the Court is aware, last year, Finger Lakes Capital Partners, LLC ("FLCP"), an affiliate of the Debtor and also a Chapter 11 debtor before this court, received an adverse decision in a case it commenced against Lyrical, forcing FLCP to seek relief under Chapter 11 in this Court under case no. 16- 22112.

11. Lyrical was also an investor in the Debtor, having been granted 2 distinct equity pieces for Lyrical's total equity investment of $3,650,000. First, it received a 78.61% equity stake in the Debtor as well as a subordinated "note" in the principal amount of $3,400,000 (the "Subordinated Note"), which notice clearly states, inter alia, that, for purposes of collection on the Subordinated Note, Lyrical shall be treated, for all purposes, as an equity interest holder and that the note shall be subordinate to all creditors of the Debtor. Second, Lyrical received an additional 5.78% equity piece in the principal amount of $250,000.

12. The Debtor has multiple other non-insider equity holders in addition to Lyrical and FLCP.

13. Notwithstanding the subordinated and "disguised" equity nature of the Subordinated Note, Lyrical accelerated the Subordinated Note and in 2015 commenced an action against the Debtor in New York Supreme state court, which resulted in entry of a judgment in favor of Lyrical on June 30, 2016.

14. Despite the express language contained in the Subordinated Note, Lyrical has been attempting to collect on the judgment by sending restraining notices and information subpoena to various parties including Tiber.

15. Such activities interfered with the Debtor's sensitive relationship with Tiber at a time when the Debtor was trying to monetize its investment in Tiber for the benefit of *all* creditors

3

and equity interests including Lyrical.

16. However, if Lyrical were have been permitted to enforce its judgment, it would in essence have received a preference over any actual creditors and other equity interest holders.

17. Accordingly, the Debtor filed for Chapter 11 relief in order to ensure that the assets of the estate, upon realization, will be distributed fairly and in accordance with the absolute priority rule set forth in the Bankruptcy Code.

## The Debtor's Objection to the Lyrical "Claim"

18. On January 11, 2017, the Debtor filed Schedules of Assets and Liabilities and a Statement of Financial Affairs (the "Schedules").

19. By Order dated February 24, 2017 (the "Bar Date Order"), the Court established April 6, 2017 as the last day by which certain proof of claim could be timely filed (the "Bar Date"). In accordance with the Bar Date Order, written notice of the Bar Date was mailed to, among others, all creditors listed on the Schedules.

20. On April 4, 2017, Lyrical filed an unsecured nonpriority claim in the amount of $4,968,393.43 for money loaned based upon an Amended and Restated Promissory Note dated March 10, 2006 (the "Note"), a copy of which is attached to the Proof of Claim, which is annexed hereto as **Exhibit "A"** [ECF Claim no. 2].

4

21. Pursuant to terms of the Note, for purposes of collecting any amounts due under the Note, Lyrical shall be deemed an <u>equity holder</u> of the Borrower, i.e., the Debtor, pari passu with other equity holders of the Debtor with no priority over other equity interest holders (let alone unsecured creditors of the Debtor). Therefore, Lyrical does not hold a claim against the Debtor.

22. Specifically, paragraph 7(b) of the Note states as follows (emphasis added):

> 7. Remedies on Default.
>
> (a) If any Event of Default shall occur and be continuing, then the entire principal amount and accrued but unpaid interest due under this Note shall, at the option of the Holder hereof and upon written notice to the Borrower by the Holder, become immediately due and payable. In addition, upon the occurrence of any Event of Default, the interest rate of this Note shall increase to 24% per annum or the maximum interest rate allowable under applicable usury laws.
>
> (b) Notwithstanding Paragraph 7(a), **Holder agrees that for purposes of collecting any and all amounts due hereunder upon the occurrence and during the continuance of an Event of Default** (provided that the Holder shall be permitted, as such time, to enforce its rights hereunder and retain payments received hereunder) **Holder shall be deemed an equity holder of Borrower and, accordingly, Holder's claims for any and all amounts due hereunder shall be junior to other creditors of the Borrower and shall be on a pro-rata basis with the equity holders of Borrower**.

23. Based upon the clear unambiguous language of the Note, any claim asserted by Lyrical as the Holder of the Note is deemed solely an equity interest.

24. On June 2, 2017, the Debtor filed an objection to Lyrical's claim to have it reclassified as only an equity interest in the Debtor [ECF Doc. No. 15]. A copy of the Debtor's claim objection is annexed hereto as **Exhibit "B'"**. The Debtor's claim objection is currently returnable on August 24, 2017.

**Objection to the Motion**

25.     Later that very same day, on June 2, 2017, Lyrical filed its self-styled "Plan" [ECF Doc. No. 19]. The so-called Plan consists of a mere one and a half pages, replete with insufficiencies, erroneous facts and provisions that violate Sections 1122, 1123, 1125 and 1129 of the Bankruptcy Code.

26.     First, the treatment of professional fee claims violates Section 1129 of the Bankruptcy Code, in that (a) the Plan attempts to cap or limit the payment of such fees despite the amounts that may be allowed by the Bankruptcy Court and (b) proposes to pay such capped claim at an uncertain date in the future and subject to a condition that may never occur (i.e., realization on the Tiber note). Under Section 1129 of the Bankruptcy Code, all administrative expense claims must be paid in full on confirmation absent other agreement by the administrative creditor. It is impermissible to impair administrative expense claims absent consent of the administrative claimant. See *In re Teligent, Inc.*, Et Al., 282 B.R. 765 (Bankr. S.D.N.Y. 2002). The Plan therefore does not comply with the requirements of Sections 1129(a)(1), (2) (8) and (9) of the Bankruptcy Code.

27.     The Plan further attempts to elevate the priority of Lyrical's equity interest to a claim with priority over the other equity interests in the Debtor in violation of the absolute priority rule embodied in Sections 507 and 1129 of the Bankruptcy Code. The Plan has also not been proposed in good faith. Therefore, the Plan does not comply with the requirements of sections 1129(a)(1), (2) and (3) of the Bankruptcy Code.

28.     At a minimum, consideration of the Plan Motion should be adjourned until the Court adjudicates the Debtor's claim objection. However, if the Debtor is unsuccessful, the Plan still cannot be confirmed for the reasons set forth herein.

29. Even assuming the Court would somehow waive the requirement of a separate disclosure statement, the Plan is lacking material disclosures which are necessary for interested parties to, if not vote, at least consider objecting to the Plan.

30. For example, there is no discussion, disclosure or justification as to why Lyrical's equity interest should be elevated to a claim senior in right to the other equity interest holders, with the effect of wiping out similarly situated interest holders to their irreparable harm and detriment.

31. There are also no disclosures concerning the Debtor's sole asset - its debt interest in Tiber, Inc. - concerning its value or the estate's likelihood of recovery on such asset.

32. There are no disclosures as to how Lyrical is going to liquidate or monetize such asset, as if it expects the Debtor's existing managing member to do so for Lyrical's sole and unjust benefit. The Plan therefore lacks any discussion or provisions regarding feasibility and therefore does not comply with the requirements of Section 1129(a)(11).

33. In fact, there are no financial disclosures *of any kind* in the Plan.

34. The Plan contains no discussion of tax consequences of the Plan, which consequences could be significant to the other equity holders.

35. There is no liquidation analysis discussed in or attached to the Plan.

36. There is no discussion of estate causes of action, including Article V actions, if any.

37. The Plan therefore does not comply with the most basic requirements of Section 1125 to the extent applicable to the Plan.

**Conclusion**

38. The Plan is not only patently unconfirmable (e.g., bad faith, unlawful impairment, violation of absolute priority rule, etc.) but is lacking material provisions and disclosures necessary to satisfy even the most minimal of requirements under Sections 1122, 1123, 1125 and 1129 of the Bankruptcy Code.

39. The Plan should, at a minimum, not be considered until the adjudication of the Debtor's claim objection against Lyrical. Only then should the Court, the Debtor and other parties be required to spend more judicial resources to address and/or amend and/or modify the numerous material deficiencies, defects and unconfirm ability of the Plan as proposed.by Lyrical.

**WHEREFORE**, the Debtor respectfully requests that the Court (a) find the Plan unconfirmable as a matter of law and (b) deny the other aspects of the Motion in their entirety, together with such other and further relief as is just, proper and equitable under the circumstances.

Dated: White Plains, New York
June 29, 2017

DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Attorneys for the Debtor*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200

By: */s/ Jonathan S. Pasternak*
Jonathan S. Pasternak